UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | NO. 3:15-cr-00069 |
| ) | JUDGE SEAN F. COX |
| GEORGE DAVID GEORGE ) | |
| ) | |

**GOVERNMENT'S NOTICE AND MOTION IN LIMINE TO ADMIT EVIDENCE**

The United States, by and through the undersigned Assistant United States Attorney, hereby serves notice of its intent to introduce in its case-in-chief evidence that the defendant opened a credit card in the name of Dr. Roger Garcia, a WellCity investor and former WellCity employee, used the credit card to pay for his (the defendant's) personal expenses, bounced a payment check to the credit card company and spent the entire line of credit, ultimately leaving Dr. Garcia responsible for the $35,000 unpaid card balance (hereinafter collectively referred to as "the credit card evidence").

I.   **Background**

The defendant is charged with numerous crimes stemming from his scheme to use his company, WellCity, to defraud investors and potential investors, between March 2011 and April 2014. *See generally* D.E. 70 (superseding indictment). Dr. Roger Garcia, a physician from Ohio, was among those investors.

The defendant reached out to Dr. Garcia in the Fall of 2011, having heard about him and his work on wellness, through mutual friends. Around that time, Dr. Garcia visited Nashville at the defendant's invitation to see WellCity and discuss the company. The defendant explained to

1

Dr. Garcia that WellCity was an internet-based start-up designed to create programs and education on various topics related to wellness. Dr. Garcia was intrigued as he had a wellness practice in Ohio at the time and had written books on the subject of wellness.

Thereafter, the defendant invited Dr. Garcia to be WellCity's "Chief Wellness Officer." Dr. Garcia agreed to work with WellCity and began around January of 2012. For approximately the next year, Dr. Garcia traveled to Nashville a few days a week to work with WellCity. Although he was not paid a salary, Dr. Garcia expected to be compensated from an ownership stake in the company when it became profitable.

During the same period that the defendant was recruiting Dr. Garcia to serve as an officer of WellCity, he was recruiting him to make financial investments in the company. The defendant told Dr. Garcia that he would receive a certain percentage of the company's shares and convinced him to begin investing at regular intervals over the course of a year. Over a 12-month period, Dr. Garcia made numerous investments with the defendant, totaling $650,000. The defendant was the only person associated with WellCity that solicited investments from Dr. Garcia or explained the terms of the investments. Dr. Garcia lost his entire investment.

At some point while Dr. Garcia was still associated with WellCity, and still believed in the defendant and the company, he learned that the defendant had opened a WellCity credit card using his (Dr. Garcia's) name. Dr. Garcia did not object to this because he was invested in the company and, for the first few months, the defendant paid the outstanding balance on the card. However, toward the end of Dr. Garcia's relationship with the defendant and WellCity, he became aware that the defendant was using the credit card to pay for personal expenses. Moreover, the defendant ran up the maximum balance on the card, $35,000.00, and sent in a worthless check to cover the balance. Ultimately, Dr. Garcia was stuck with a credit card bill for $35,000.

## II. The credit card evidence is intrinsic to the defendant's scheme

Res geste is commonly referred to as "intrinsic evidence," and is admitted "in limited circumstances when the evidence includes conduct that is 'inextricably intertwined' with the charged offense." *United States v. Churn*, 800 F.3d 768, 779 (6th Cir. 2015). In order to be admitted under the res geste doctrine, evidence should have a "causal, temporal, or spatial connection with the charged offense." *United States v. Hardy*, 228 F.3d 745, 748-49 (6th Cir. 2000). Evidence may be admitted under the res geste doctrine if it "is directly probative of the charged offense, arises from the same events as the charged offense, forms an integral part of the witness's testimony, or completes the story of the charged offense." *United States v. Grooms*, 566 Fed. App'x 485, 491 (6th Cir. 2014).

In *Churn*, the Government wanted the witness to testify regarding a real-estate fraud scheme that occurred prior to the fraud in the instant case. *Churn*, 800 F.3d at 777. The Government argued that the fraud at issue in the case "'occurred at the same time,' was 'part of the same series of events,' and happened in the same manner as the [prior fraudulent scheme]." *Id.* at 778. The Defendant argued that res geste and Fed. R. Evid. 404(b) were inapplicable. *Id.* The trial court admitted the evidence as "intrinsic" since "it explains the relationship between the witness and the defendant and the nature of their business relationship." *Id.* The Sixth Circuit affirmed the trial court's decision because the evidence "was 'closely related in both time and nature to the crime charged.'" *Id.* at 779 (quoting *United States v. Vincent*, 681 F.2d 462, 465 (6th Cir. 1982)).

Just as in *Churn*, Roger Garcia's testimony regarding the defendant opening a credit card in Garcia's name and sticking Garcia with a $35,000 unpaid balance happened during the same timeframe as the charged conduct and was part of the same series of events that allowed the

defendant to swindle Roger Garcia out of his $650,000 investment in WellCity. The evidence is there for intrinsic to the charged conduct and should be admitted.

### III. The credit card evidence is also admissible under Rule 404(b)

#### a. Rule 404(b)

Under Fed. R. Evid. 404(b)(2), evidence of prior bad acts may be admitted to prove "motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." The credit card evidence is admissible under Fed. R. Evid. 404(b)(2) to prove the defendant's intent and plan to defraud Dr. Garcia. Dr. Garcia, in turn, is one of the investors that form the basis for the securities fraud charge in Count Nine of the Superseding Indictment.

#### b. Rule 403

Evidence that may be admitted under Rule 404(b) must still be subjected to the balancing test of Rule 403. *United States v. Merriweather*, 78 F.3d 1070, 1077 (6th Cir. 1996). The text of Rule 403 clearly indicates that this balancing test should be "struck in favor of admissibility." *United States v. Wright*, Nos. 86-3599, 86-3609 and 86-3613, 1987 WL 44946 (6th Cir. Oct. 5, 1987)(citing *United States v. Laughlin*, 772 F.2d 1382, 1393 (7th Cir. 1985)). As noted above, the probative value of the credit card evidence is significant because it happened during the same time frame as the charged conduct, was the product of the same deceit by the defendant and clearly illustrates the defendant's intent and plan to defraud Dr. Grarcia. This probative value far outweighs any risk of prejudice to the defendant, and, therefore, the evidence should be admitted.

## IV. Conclusion

WHEREFORE, the Government respectfully moves the Court to admit at trial in the above-captioned matter the credit card evidence as set out above and, hereby provides notice of its intent to use said evidence in its case-in-chief. This evidence is admissible under the res geste doctrine as well as to prove the defendant's intent and plan under Fed. R. Evid. 404(b).

Respectfully submitted,

JACK SMITH
Acting United States Attorney

/s **Henry C. Leventis**
HENRY C. LEVENTIS
RYAN R. RAYBOULD
Assistant United States Attorneys
110 Ninth Avenue South, Suite A-961
Nashville, Tennessee 37203-3870
Telephone: (615) 736-5151

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and exact copy of the foregoing document has been served through the electronic case filing system upon Peter J. Strianse, counsel for the defendant upon this 11th day of April 2017.

*s/ Henry C. Leventis*
HENRY C. LEVENTIS
Assistant United States Attorney

5

Case 3:15-cr-00069   Document 90   Filed 04/11/17   Page 5 of 5 PageID #: 348