UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Case No. 3:15-cr-00069 |
| | ) | Judge Billy Roy Wilson |
| GEORGE DAVID GEORGE | ) | *Sitting by Intercircuit Assignment* |

**MOTION OF DEFENDANT GEORGE DAVID GEORGE FOR A MITIGATED
SENTENCE AND VARIANCE BELOW THE SENTENCING GUIDELINES**

Defendant George David George comes before the Court for sentencing after having entered a plea of guilty to counts one through ten of the superseding indictment charging wire fraud, mail fraud, securities fraud and money laundering. Mr. George submits this sentencing memorandum to aid the Court in determining an appropriate sentence under 18 U.S.C. § 3553(a). The U.S. Probation Office has calculated, under the U.S. Sentencing Guidelines, a sentencing range of 168 to 210 months.[1]

This case originally came to the Court via a *Criminal Information* evidencing an early and timely intent to plead guilty. (Docket Entry 1). The first binding plea agreement reached between the parties under the terms of Rule 11(c)(1)(C) and submitted to the Court on March 8, 2016 called for a sentence of 72 months. (Docket Entries 29 & 30). The District Court rejected the plea agreement. (Docket Entry 43). A second binding plea agreement calling for a 92-month sentence was submitted to the Court on June 23, 2016. (Docket Entries 49 & 50). Although the District Court had the full benefit of the original presentence report at the time the second binding guilty plea was entered and provisionally accepted, the Court ultimately rejected the agreement approximately three months later on September 8, 2016. (Docket Entry 59). The

---

[1] This range is two levels higher than the advisory range suggested by the parties in their Rule 11(c)(1)(B) plea agreement. The Probation Department has assessed a two-level enhancement, pursuant to § 2B1.1(b)(9)(C), for violating an administrative cease and desist order. Mr. George has objected to this proposed enhancement in a separate filing. (Docket Entry 135).

advisory guideline range in the *Revised* PSR – roughly 14 to 17.5 years – is clearly disproportionate to the offense conduct for which Mr. George will be convicted.

Mr. George respectfully requests that the Court impose a mitigated sentence and variance below the Guidelines, considering factors under 18 U.S.C. § 3553(a). Defendant George respectfully suggests that in weighing the factors in § 3553(a), the Court should impose a mitigated sentence in this case which is below the advisory guideline range calculated in the presentence report. In *United States v. Booker*, 543 U.S. 220, 245, 125 S.Ct. 738, 160 L.Ed. 2d 621 (2005), the Supreme Court held that the Sentencing Guidelines were advisory. Accordingly, "a district court is permitted to vary from those guidelines in order to impose a sentence which fits the mandate of [§] 3553(a)." *United States v. Collington*, 461 F.3d 805, 808 (6th Cir. 2006).

**Background**

David George was the first-born child into a family that honored devotion to the church and service. His father was a preacher and his mother was a preacher's wife. To this day, his parents remain married and dedicated to their church home where his father still preaches at age 88. David, being the child of a preacher, was expected to live up to high ideals as well. Even as a child he carried the expectation that his actions were judged and analyzed above others. A pressure to perform as if on stage – and under a microscope – has shadowed him as long as he can remember.

> [David] received an excellent education at FHU [Freed Hardeman University] and Harding [College Graduate School of Theology], etc. He always had a good heart and was a very popular & effective preacher. He is especially needed by way of encouragement during our declining years. (88 each).

*Letter,* Malcolm & Verlin George, Parents. (Docket Entry 136, Page ID# 554).

David spent his junior high years in Beirut, Lebanon where his parents were missionaries. Returning to the States, he attended high school where he was chosen "Best All Around" his senior year and also inducted into the "School Hall of Fame." He attended Freed Hardeman University for undergraduate studies. He was president of his freshman and sophomore classes. He was honored by receiving the "Timothy Award" for the most outstanding graduate of the university. Five years later, he returned to Freed Hardeman to receive the "Outstanding Young Alumnus" award. David went on to receive a Masters of Theology spending several years in ministry and counseling. He taught numerous Bible and Sunday School classes throughout the years.

David has been happily married to his wife for 35 years. He is the proud father of four children and six young grandchildren. He considers them his bedrock and in turn, he is the cornerstone of the family.

> I am the youngest of his 4 children and have always been [David George's] biggest supporter. I would be very naive in saying that my father has never done anything wrong. I know he has made several mistakes in his life that I have seen first hand. He has always had pressure on him to succeed and live a 'perfect' life ever since a very young man. I do feel like these 'pressures' have forced him to make these mistakes. However, I know that I have never felt more love than anybody in my life than the love I feel from my father. He has always been there for me or anybody else in our family.

*Letter,* Justin George, Son. *Id.* at Page ID# 552.

> [My father] has been the most influential, caring, loving and kind person in my life and my hope is that our boys [his grandsons] will also have the chance to know this special man's heart the way I do.

*Letter,* Bree Barry, Daughter. *Id.* at Page ID#553.

A long-time friend and former WellCity colleague, Chris Tatum, recalls in his letter to the Court a kindness that David extended to a former WellCity employee.

3

Case 3:15-cr-00069   Document 137   Filed 03/15/19   Page 3 of 16 PageID #: 561

> Had this case gone to trial, a man named Mark Roy was scheduled to testify against Mr. George. What Your Honor might not have learned during the trial is that Mark Roy was homeless when Mr. George took him in and gave him a job as a graphic artist, even though his skills fell far short of what WellCity needed them to be, and despite protests from me and other WellCity team members [,] Mr. George also paid for a hotel room for months in which Mr. Roy lived. If only more people could be so kind to America's homeless population.
>
> . . .
>
> Despite what Mr. George is accused of; despite the fact that WellCity never materialized into the great, one-of-a-kind company I believe it could've been, I assure you David George's passion was genuine when he launched it.

*Letter,* Chris Tatum. *Id.* at Page ID# 577.

## *VARIANCE*

*The circumstances of this case are sufficiently extraordinary to warrant a variance/downward departure based on **The Need to Avoid Unwarranted Sentence Disparities Among Defendants Who Have Been Found Guilty of Similar Conduct; and, The Advisory Guideline Range Provides No Useful Advice Because it is Not Based on Empirical Evidence or National Experience and Fails to Promote Any Rational or Legitimate Purpose of Sentencing.***

*Booker* requires this Court to correctly score an advisory guideline range and then comply with the entire statutory command of 18 U.S.C. §3553(a) by considering the factors listed in §3553(a)(1)-(7). This allows the Court to individualize a sentence which is "sufficient but not greater than necessary." *United States v. Booker*, 543 U.S. 220 (2005); *United States v. Cage*, 458 F.3d 537, 540 (6th Cir. 2006).

This Court may, and should, vary its sentence from the advisory guideline range if a variance sentence meets the requirements of 18 U.S.C. §3553(a). *Rita v. United States*, 551 U.S. 338 (2007). The court may vary its sentence based on its weighing of one or more of the §3553(a) factors. *United States v. Borden*, 365 Fed.Appx. 617, 619, fn. 2 (6th Cir. 2010). This Court may vary a sentence because it disagrees with the advisory guideline range on general

4

policy grounds, individualized fact grounds, or because this Court concludes a different sentence is appropriate regardless of the guideline range. *Rita v. United States*, 551 U.S. 338, 347-348 (2007). This Court may depart from the advisory guideline range based on the application of a guideline provision. *Id*. The same facts and analysis can support both a variance and a departure, *United States v. Grams*, 566 F.3d 683, 686-87 (6th Cir. 2009), but a variance is grounded in the district court's broader discretion in considering the §3553(a) factors. *Irizarry v. United States*, 128 S.Ct. 2198, 2202-03 (2008).

The Guidelines merely provide a "starting point" for the Court's sentencing considerations. *Gall v. United States,* 532 U.S. 38, 49 (2007); *accord Cunningham v. California*, 549 U.S. 270 (2007). While a sentencing court must consider the Guidelines as a starting point, a court should not presume "that the Guidelines range is reasonable." *Gall*, 552 U.S. at 50. Instead the Court is to impose sentence after "mak[ing] an individualized assessment based on the facts presented" in each particular case. *Id.* Moreover, the Court need *not* find "extraordinary circumstances to justify a sentence outside of the Guidelines range." *Id.* at 47. As one district court judge has put it, the Guidelines' "most fundamental flaw is the notion that the complexity of human character and conduct can be rationally reduced to some arithmetic formula."[2] This is especially true in white collar cases such as this case, where the sentencing range is largely determined by escalating loss enhancements pursuant to USSG §§ 2B1.1, an increasingly criticized approach that usually results in draconian advisory Guidelines. *See, e.g.*, *United States v. Adelson*, 441 F. Supp. 2d 506, 512 (S.D.N.Y. 2006) (describing "the utter travesty of justice that sometimes results from the guidelines' fetish with abstract arithmetic, as well as the harm that guideline calculations can visit on human beings if

---

[2] Terry Carter, *Rakoff's stance on the SEC draws fire, praise – and change: The Judge Who Said No,* ABA Journal, Oct. 2013, at 53.

not cabined by common sense."); *see also United States v. Parris*, 573 F. Supp. 2d 745, 754 (E.D.N.Y. 2008) (noting that despite the fact that the Guidelines "reflect Congress' judgment as to the appropriate national policy for such crimes . . . this does not mean that the Sentencing Guidelines for white-collar crimes should be a black stain on common sense" and sentencing defendant "to a term of incarceration of 60 months in the face of an advisory guidelines range of 360 to life."). The Supreme Court's decisions in *Gall*, *Cunningham*, and *Kimbrough v. United States*, 552 U.S. 85 (2007), significantly broadened the discretion of courts to impose a less stringent sentence than the one suggested by the Guidelines, and in this case the Court should exercise its broad discretion and impose a sentence substantially below the Guidelines calculated by Probation.

  A. *The Need to Avoid Unwarranted Disparities*

A critical sentencing factor in this case is the need to avoid disparity with the types of sentences imposed in similar cases. In similar cases, below-Guidelines variances are substantial and have reflected the belief of many courts, academics, and commentators that the Guidelines in fraud cases – drive by a mechanical application of the Guidelines' loss provisions – result in astronomically high advisory sentencing ranges that bear little relation to the nature of the offense or the history and characteristics of a defendant.

The types of sentences imposed in fraud cases beyond this district are instructive and appropriately considered by the Court. *See, e.g., United States v. Doan,* 498 F.Supp.2d 816, 820 (E.D.Va. 2007) ("This Court does not dispute the value in looking nationwide to similarly situated criminal defendants of similar culpability that have committed similar acts resulting in similar convictions....").

6

| CASE | CONVICTION | LOSS/RESTITUTION | GUIDELINE RANGE | SENTENCE |
|---|---|---|---|---|
| *U.S. v. Naponelli* 4:11-3046 D. Ariz. 2013 | Guilty Plea: Conspiracy to Commit Bank Fraud & Conspiracy to Commit Money Laundering | $3.1 Million | | 24 Months |
| *U.S. v. Atwood* 4:11-3046 D. Ariz. 2013 | Guilty Plea: Conspiracy to Commit Wire Fraud | $586,000.00 | 33-41 Months (Plea Agreement Offense Level 20) | 15 Months (45% of Guideline Range) |
| *U.S. v. Jackson* 4:11-3046 D. Ariz. 2013 | Guilty Plea: Conspiracy to Commit Wire Fraud | $480,000.00 | 24-30 Months (Plea Agreement Offense Level 17) | 6 Months (25% Guideline Range) |
| *U.S. v. Fruit* 4:11-3046 D. Ariz. 2013 | Guilty Plea: Conspiracy to Commit Bank Fraud & Conspiracy to Commit Money Laundering | $2.6 Million | 46-57 Months (Plea Agreement Offense Level 23) | 30 Months (65% Guideline Range) |
| *U.S. v. Johnson* 3:11-307 N.D. Tex. 2013 | Guilty Plea: Conspiracy to Commit Wire Fraud | $3.8 Million | | 48 Months (Government Recommended) |
| *U.S. v. Whaley* 3:10-169 E.D. Tenn. 2013 | Trial Conviction: Conspiracy to Commit Wire Fraud, Wire Fraud & Bank Fraud, False Statements & Money Laundering | $2 Million | | 60 Months |
| *U.S. v. Kerley* 3:10-169 E.D. Tenn. 2013 | Trial Conviction: Conspiracy to Commit Wire Fraud, Wire & Bank Fraud & False Statements | $2 Million | | 48 Months |
| *U.S. v. Zaleski* 2:09-118 E.D. Wis. 2013 | Guilty Plea: Wire Fraud & Money Laundering | $2.5 Million+ | 70-87 Months (Level 27 with 4 more levels possibly added for role in offense per plea agreement = 108-135 Months) | 14 Months (20% Guideline Range) |
| *U.S. v. Hightower* 2:12-114 S.D. Ohio 2013 | Guilty Plea: Conspiracy to Commit Money Laundering, Making False Statements to Financial Institution & Money Laundering | $2 Million | 30-36 Months (Parties Agreed Upon Range) | 30 Months (Guideline Sentence) |

7

| CASE | CONVICTION | LOSS/RESTITUTION | GUIDELINE RANGE | SENTENCE |
|---|---|---|---|---|
| *U.S. v. Williams* 3:12-70 N.D. Fla. 2013 | Guilty Plea: Conspiracy to Commit Mail Fraud, Mail Fraud & Conspiracy to Commit Money Laundering | $13.8 Million | 235-293 Months (PSR Recommended) | 120 Months (51% Guideline Range) |
| *U.S. v. M. Kistner* 2:11-283 S.D. Ohio 2013 | Guilty Plea: Conspiracy to Commit Money Laundering | $382,000.00 | | 3 Years Probation |
| *U.S. v. D. Kistner* 2:11-283 S.D. Ohio 2013 | Guilty Plea After 4 Days of Trial: Conspiracy to Commit Bank Fraud, Conspiracy to Commit Money Laundering & Bank Fraud | $9.6 Million | 121-151 Months (PSR Calculation with 2 Points Contested) | 66 Months (54% Guideline Range) |
| *U.S. v. Ennis* 2:11-283 S.D. Ohio 2013 | Guilty Plea: Conspiracy to Engage in Financial Transaction in Excess of $10,000 Involving Criminally Derived Property | $1.7 Million | | 3 Years Probation |
| *U.S. v. Smith* 2:11-283 S.D. Ohio 2013 | Guilty Plea: Conspiracy to Engage in Financial Transaction in Excess of $10,000 Involving Criminally Derived Property | $318,000.00 | 18-24 Months | 3 Years Probation (0% Guideline Range) |
| *U.S. v. Gross* 2:12-66 D. Nev. 2013 | Guilty Plea: Bank Fraud | $8.4 Million | 51-63 Months (Plea Agreement) | 18 Months (36% Guideline Range) |
| *U.S. v. Berger* 2:09-308 W.D. Pa. 2012 | Guilty Plea: Conspiracy to Commit Wire Fraud & Conspiracy to Commit Money Laundering | $6.7 Million | 292-365 Months | 78 Months (26% Guideline Range) |
| *U.S. v. Long* 12-241 E.D. Wis. 2013 | Guilty Plea: Bank Fraud & Money Laundering | $1. Million | | 21 Months |
| *U.S. v. Spady* 12-27 D. Minn. 2013 | Guilty Plea: Conspiracy to Commit Wire Fraud, False Tax Return | $1.1 Million | | 24 Months |

| CASE | CONVICTION | LOSS/RESTITUTION | GUIDELINE RANGE | SENTENCE |
|---|---|---|---|---|
| *U.S v. Willis* 4:11-117 E.D. Tex. | Guilty Plea: Conspiracy to Commit Money Laundering | $6.7 Million | 97-120 Months | 48 Months (49% Guideline Range) (5K 1.1 Departure Applied) |
| *U.S. v. Curry* 2013 WL 6501167 6th Cir. 2013 | Guilty Plea: Wire Fraud | $697,000.00 | 41-51 Months (Plea Agreement) | 41 Months (Guideline Sentence) |
| *U.S. v. Hampton* 732 F.3d 687 6th Cir. 2013 | Guilty Plea: Wire Fraud & Access Device Fraud | $142,000.00 | | 18 Months |
| *U.S. v. Sims* 517 Fed. Appx. 439 6th Cir. 2013 | Guilty Plea: Bank Fraud | $2.4 Million | 78-97 Months | 87 Months (Guideline Sentence) |
| *U.S. v. Holman* 516 Fed. Appx.439 6th Cir. 2013 | Guilty Plea: Money Laundering & Conspiracy to Commit Mail Fraud | $3 Million | 33-41 Months | 41 Months (Guideline Sentence) |
| *U.S. v. Dowlen* 514 Fed. Appx. 559 6th Cir. 2013 | Trial Conviction: Bank Fraud | $410,000.00 | | 37 Months (Guideline Sentence) |
| *U.S. v. Shelton* 3:02-264 D. Conn. | Trial Conviction: 12 Counts Total of Mail & Wire Fraud, False Statements to SEC, Conspiracy to Commit Securities & Securities Fraud | $3.3 Billion | 127 Months (Bottom of Range) | 120 Months (94% Guideline Range) |
| *U.S v. Whittier* 1:07-87 S.D. N.Y. | Guilty Plea: Securities Fraud & Failure to Disclose Ownership of Publicly Traded Security | $88 Million | | 36 Months |
| *U.S. v. R. Singletary* 649 F.3d 1212 11th Cir. 2011 | Guilty Plea: Conspiracy to Commit Wire Fraud & False Representations to HUD | $1 Million | 33-41 Months | 12 Months & 1 Day (36% Guideline Range) |
| *U.S. v. P. Singletary* 649 F.3d 1212 11th Cir. 2011 | Guilty Plea: Conspiracy to Commit Wire Fraud & False Representations to HUD | $1 Million | 51-63 Months | 18 Months (35% Guideline Range) |

| CASE | CONVICTION | LOSS/RESTITUTION | GUIDELINE RANGE | SENTENCE |
|---|---|---|---|---|
| *U.S. v. Bloom* 1:12-00409 N.D. Ill. *Former Sentinel Manaegment Group CEO* | Conviction: Wire Fraud | $665 Million | 55-Life | 168 Months |
| *U.S. v. Illarramendi* 3:11-00041 D. Conn *Hedge Fund Manager, $723 Million Ponzi Scheme* | Guilty Plea: Wire, Securities & Investment Advisor Fraud & Conspiracy | $723 Million | 43-Life | 156 Months |
| *U.S. v. Greenwood* 1:09-00722 S.D.N.Y. *Co-Founder WG Trading Co., LP* | Guilty Plea: Conspiracy; Securities, Commodities & Wire Fraud & Money Laundering | $554 Million | 46-Life | 120 Months |
| *U.S. v. Adelson* 441 F.Supp.2d 506 S.D. N.Y. 2006 *CEO of Public Company* | Conviction: Conspiracy, Securities Fraud & False Filings | $50-$100 Million | 43-Life | 42 Months |
| *U.S. v. Ovid* 09-216 2010 WL 3940724 E.D. N.Y. 2010 | Guilty Plea: Conspiracy to Commit Securities Fraud | $7 Million+ | 210 Months | 60 Months |
| *U.S. v. Campbell* 1:08-007 M.D. Pa. | Conviction: Conspiracy to Commit Mail Fraud | $119 Million | 210 Months | 24 Months |
| *U.S. v. Olis* 03-217 2006 WL 2716048 S.D. Tex. 2006 *Dynegy Tax Executive* | Conviction: Securities, Mail & Wire Fraud & Conspiracy | $79 Million (Intended Loss) $714 Million (Actual Loss) | 151 Months | 72 Months |
| *U.S. v. Livesay* 2:03-0018 N.D. Ala. 2010 | Conviction: Conspiracy to Commit Wire & Securities Fraud, Falsifying Books, False Certifications | $1 Billion+ | 78 Months | 5 Months |
| *U.S. v. Faulkenberry* 795 F.Supp.2d 915 S.D. Ohio 2010 *Founder of National Century Financial Enterprises* | Conviction: Securities Fraud, Money Laundering & Conspiracy | $2.9 Billion | 43-Life | 120 Months |

10

| CASE | CONVICTION | LOSS/RESTITUTION | GUIDELINE RANGE | SENTENCE |
|---|---|---|---|---|
| U.S. v. Kumar 617 F.3d 612, 634 2nd Cir. 2010 | Guilty Plea: Securities & Wire Fraud, False Public Statements to SEC, False Statements to FBI | $400 Million-$1 Billion | 43-Life | 144 Months |
| U.S. v. I. Jenkins 633 F.3d 788, 796 9th Cir. 2011 | Conviction: Conspiracy, Securities & Wire Fraud, Tax Evasion & Money Laundering | $9 Million | 43-Life | 180 Months |
| U.S. v. R. Jenkins 633 F.3d 788, 796 9th Cir. 2011 | Conviction: Conspiracy, Securities & Wire Fraud, Tax Evasion & Money Laundering | $9 Million | 324 Months | 90 Months |
| U.S. v. Gabayzadeh 428 Fed. Appx. 43, 50 2nd Cir. 2011 *CEO* | Conviction: Bank & Securities Fraud | $193 Million | 43-Life | 180 Months |
| U.S. v. Peppel 3:06-00196 S.D. Ohio 2013 | Guilty Plea: Conspiracy to Commit Securities, Mail & Wire Fraud | $18 Million | 97 Months | 24 Months |
| U.S. Martoma 12-973 2014 WL 4419682 S.D. N.Y. 2014 *Portfolio Manager* | Conviction: Securities Fraud Related to Insider Trading | $283.1 Million | 188 Months | 108 Months |
| U.S. v. Smith 181 Fed. Appx. 898, 899 11th Cir. 2006 | Guilty Plea: Conspiracy to Commit Wire & Securities Fraud | $327 Million | 43-Life | 27 Months |
| U.S. v. Turk 626 F.3d 743, 744 2nd Cir. 2010 | Guilty Plea: Conspiracy to Commit Mail & Wire Fraud | $27 Million | 121 Months | 60 Months |
| U.S. v. Baker 2014 WL 3007691 W.D. Tex. 2014 | Conviction: Securities Fraud | $756 Million | 43-Life | 120 Months |
| U.S. v. Manafort 1:18-00083 E.D. Va. 2019 | Conviction: Bank Fraud, False Tax Returns, FBAR | $6.02 Million | 235-293 Months | 47 Months |
| U.S. v. Manfort 17-201 D.C. Cir. 2019 | Guilty Plea: Conspiracy Against U.S. & Conspiracy to Obstruct Justice | | 188-235 Months | 60 Months |

> B.  *The Advisory Guideline Range Provides Little Useful Advice Because it is Not Based on Empirical Evidence or National Experience and Fails to Promote Any Rational or Legitimate Purpose of Sentencing.*

The statistics and cases show that Judges are finding that § 2B1.1 produces sentences that are too severe in many cases. As one district court found "because the fraud offense Guidelines were promulgated pursuant to Congressional directives rather than by application of the Sentencing Commission's unique area of expertise, the court affords them less deference than it would to empirically-grounded Guidelines." *United States v. Lenagh*, 2009 WL 296999, at *6 (D. Neb. 2009). David George asks this Court to also afford them less deference.

> For policy reasons, the Commission did not employ its characteristic empirical approach when setting the Guideline ranges for white-collar crimes. The Commission found that its "study of past sentencing practices revealed that in the preguidelines era, sentences for fraud, embezzlement, and tax evasion generally received less severe sentences than did crimes such as larceny or theft, even when the crimes involved in similar monetary loss," noting that a "large portion of fraud, embezzlement, and tax evasion offenders received simple probation." The Commission sought to correct this past under-punishment of "white collar" crimes, based on its determination that "penalties for some types of crime, such as 'white collar' offenses, were disproportionately low compared to other types of theft involving similar economic losses." Accordingly, the Commission drafted guidelines to reduce the availability of probation and "to ensure a short but definite period of confinement for a larger percentage of these 'white collar' cases, both to ensure proportionate punishment and to achieve adequate deterrence." In establishing sentences for economic offenses, the Commission made the pecuniary loss resulting from the crime a primary consideration in determining sentences.

*United States v. Lenagh*, 2009 WL 296999, at 3 (D. Neb. 2009) (citing United States Sentencing Commission, Fifteen Years of Guidelines Sentencing (Nov. 2004)) (other citations omitted).

Although the sentencing commission has acted to adjust the fraud loss table found at § 2B1.1(b), the fundamental deficiency of no supporting empirical evidence still persists. A look at

12

the history of the § 2B1.1 guideline shows a level that has continually increased in severity unsupported by empirical evidence. The defendant submits that the lack of empirical evidence relating to the goals of sentencing and enhanced punishment in fraud cases should lead this Court to grant a downward variance. *See Kimbrough v. United States*, 552 U.S. 85, 89, 128 S. Ct. 558, 563 (2007). When the Commission first created the Sentencing Guidelines in 1987, it stated the Commission's view "is that the definite prospect of prison, though the term is short, will act as a significant deterrent to many of these crimes." U.S.S.G. § 1.9, Part A(4)(c), Introduction (1987). The original guideline loss table provided for a 13-level increase for losses over $5 million. U.S.S.G. § 2B1.1 (1987). The loss table in 1987 was capped at adding 13 levels. *Id.* In 1998, the loss table was capped at adding 20 levels. U.S.S.G. § 2B1.1 (1998). In 2001 it was capped at adding 26 levels. U.S.S.G. § 2B1.1 (2001). Today, the loss table can add up to 30 additional levels for loss amount. U.S.S.G. § 2B1.1. All of these increases have been done without empirical support.

In addition, the fraud guideline was not based on "deterrence." When the Commission adopted the original fraud guidelines in 1987, it required confinement for most fraud cases, and adopted an initial fraud guideline up to 30-37 months for defendants in Criminal History Category I. *See* U.S.S.G. § 2F1.1 (1987). The Commission opined that "the definite prospect of prison, though the term is short, will act as a significant deterrent to many of these crimes, particularly when compared with the status quo where probation, not prison, is the norm." U.S.S.G., Ch. 1, Intro, pt 4(d)(1987); *see also* U.S. Sentencing Commission, *Fifteen Years of Guidelines Sentencing: An Assessment of How Well the Federal Criminal Justice System is Achieving the Goals of Sentencing Reform* (2004) [hereinafter *Fifteen Year Report*] (The Commission sought to ensure that white collar offenders faced "short but definite period[s] of

13

confinement"). But the Commission's "deterrence" rationale was not borne out by empirical evidence. Empirical research regarding white collar offenders showed no difference between the deterrent effect of probation and that of imprisonment. *See* David Weisburd, et. al.; *Specific Deterrence in a Sample of Offenders Convicted of White Collar Crimes*, 33 Criminology 587 (1995). Twelve years later, that conclusion remained unchanged. Avi D. Gabbay, *Exploring the Limits of the Restorative Justice Paradigm: Restorative Justice and White Collar Crime*, 8 Cardozo J. Conflict Resol. 421, 448-449 (2007) "[T]here is no decisive evidence to support the conclusion that harsh sentences actually have a general and specific deterrent effect on potential white-collar offenders."

What David George is asking this Court to do – impose a sentence below the guideline range – would not be uncommon for a court to do in a fraud case such as this. In *United States v. Gupta*, the district court of the Southern District of New York imposed a 24-month sentence, varying below the 78 to 97 month guideline range (a 70% reduction). 904 F. Supp.2d 349 (S.D.N.Y. 2012). The district court was critical of the role the loss calculation played in calculating the guideline range because he said that "the number assigned by the Sentencing Commission to various sentencing factors appear to be more the product of speculation, whim or abstract number-crunching than of any rigorous methodology – thus maximizing the risk of injustice." *Gupta*, 904 F. Supp. 2d at 351. The Court illustrated how the guidelines have increased with little to no good reason or explanation by explaining that in a case involving a $12.5 million loss and 250 shareholders in a securities fraud case in 1987, the guideline range was 30 to 37 months, but in 2003, the same defendant would face a guideline range more than 500% higher – 151 to 188 months. *Id.* at 351. By focusing so largely on a single factor, "the Sentencing Commission effectively ignored the statutory requirement that federal sentencing

14

take many factors into account, *see* 18 U.S.C. §3553(a), and, by contrast, effectively guaranteed that many such sentences would be irrational on their face." *Id.*

## Conclusion

For all of the above-stated reasons, Mr. George respectfully requests that the Court impose a sentence significantly below the advisory Guidelines determined by Probation in this case.

Respectfully submitted,

TUNE, ENTREKIN & WHITE, P.C.
UBS Tower, Suite 1700
315 Deaderick Street
Nashville, Tennessee 37238
(615) 244-2770

S:/ Peter Strianse
PETER J. STRIANSE
Attorney for Defendant George

**CERTIFICATE OF SERVICE**

       I hereby certify that a true and correct copy of the foregoing has been sent via the Court's electronic filing system unless not registered and, in that event deposited in the United States mail, postage prepaid, to:

> Kathryn Ward Booth
> Miller Bushong
> Assistant United States Attorneys
> 110 Ninth Avenue South
> Suite A961
> Nashville, TN  37203-3870
>
> **VIA EMAIL**
> Matt Morgan
> Law Clerk to the Honorable Bill Wilson
> matt_morgan@ared.uscourts.gov
>
> Vicki R. Kinkade
> U.S. District Court Clerk's Office
> Visiting Judge Coordinator
> vicki_kinkade@tnmd.uscourts.gov
>
> Terra Everett
> U.S. Probation Officer
> Terra_Everett@tnmp.uscourts.gov

this 15th day of March, 2019.

                                              S:/ Peter J. Strianse
                                              PETER J. STRIANSE