NOT RECOMMENDED FOR PUBLICATION
File Name:  20a0148n.06

No. 19-5331

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | **FILED** |
| Plaintiff-Appellee, | ) | Mar 12, 2020 |
| | ) | DEBORAH S. HUNT, Clerk |
| v. | ) | |
| | ) | ON APPEAL FROM THE |
| GEORGE DAVID GEORGE, | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE MIDDLE |
| Defendant-Appellant. | ) | DISTRICT OF TENNESSEE |

Before:  MERRITT, THAPAR, and LARSEN, Circuit Judges.

LARSEN, Circuit Judge.  George David George bilked unwitting investors out of millions of dollars that he claimed would earn them a piece of an online health and wellness company.  He lied about the company and spent much of the money others had entrusted to him on gambling and servicing his personal debts.  He was eventually convicted by plea of nine counts of fraud and one count of money laundering; though after the district court rejected his first two plea agreements, he absconded from justice, spending nineteen months as a fugitive and continuing to deceive.  The district court sentenced him to 240 months' imprisonment.  He appeals, challenging the district court's rejection of his first two plea agreements and the reasonableness of his above-Guidelines sentence.  For the reasons stated below, we AFFIRM.

I.

George was the founder and CEO of WellCity, Inc., a business that purported to operate a social media network focused on health and wellness.  Between March 2011 and April 2014, George solicited more than $3 million in investments for the business.  George obtained these

No. 19-5331, *United States v. George*

investments by lying about WellCity's financial health and by falsely asserting that WellCity either was traded publicly or had approval from the Securities and Exchange Commission to trade publicly. George also failed to inform investors of his prior convictions for mail fraud, filing a false income tax return, embezzlement, passing worthless checks, and bank fraud, to name just a few of his more glaring omissions. Rather than invest the funds in the business, he diverted a substantial portion to personal uses like gambling and retiring personal debts.

In June 2013, the Tennessee Department of Commerce and Insurance issued a cease-and-desist order to George and other WellCity employees, explaining that George was illegally offering and selling securities in WellCity and was engaging in securities fraud by failing to disclose material information about his prior criminal convictions. Nevertheless, George persisted in operating WellCity and continued his lies and omissions to potential investors.

Approximately two years later, federal prosecutors charged George by information with one count of wire fraud, in violation of 18 U.S.C. § 1343; one count of mail fraud, in violation of 18 U.S.C. § 1341; one count of money laundering, in violation of 18 U.S.C. § 1957 and § 2; and one count of securities fraud, in violation of 15 U.S.C. § 78j and 78ff and 17 C.F.R. Part 240.10b-5. Waiving felony indictment, George pleaded guilty pursuant to a Federal Rule of Criminal Procedure 11(c)(1)(C) plea agreement (First Agreement), which included an agreed-upon sentence of 72 months. The court accepted George's plea but reserved acceptance of the plea agreement pending review of the Presentence Investigation Report (PSR). At George's sentencing hearing, the court rejected the plea agreement because it found the 72-month sentence to be inconsistent with the sentencing factors set forth in 18 U.S.C. § 3553(a). Neither party objected. The court advised George that he had the right to withdraw his guilty plea.

The court later learned that, while on conditional pretrial release, George had been charged in Nevada for passing a worthless check in the amount $44,750. Shortly thereafter, the parties entered into a second plea agreement (Second Agreement), specifying a term of 92 months' imprisonment. The agreement did not indicate whether the agreed-upon sentence would run

No. 19-5331, *United States v. George*

concurrently or consecutively with sentences from other jurisdictions.  The court again accepted George's guilty plea and scheduled a sentencing hearing.

During sentencing, the court explained that it would accept a 92-month sentence that ran consecutive to George's Nevada sentence, up to a maximum of 12 months, but did not believe a 92-month concurrent sentence would be appropriate.  Defense counsel said that George would need some time to consider a partially consecutive sentence, particularly its potential effect on where he would be housed.  Thus, the court rejected the Second Agreement, so George could discuss it with his attorney and either work on a new plea agreement or go to trial.  George did not object to the court's approach.

Following this hearing, George filed a notice of intent to withdraw his guilty plea, and the case was set for trial.  Months later, a ten-count superseding indictment was filed, adding six counts of wire fraud.  Before trial could begin, the government learned that, while on release, George had engaged in yet another check-kiting scheme.  George, who was out on bail, then cut off his ankle monitor and fled.  The court issued a warrant for his arrest; and when he failed to appear for trial, he was indicted for failure to appear, in violation of 18 U.S.C. § 3146(a)(1).

Nineteen months later, authorities apprehended George in Florida.  Six days before his new trial date, he pleaded guilty pursuant to a third plea agreement (Third Agreement), in which the government agreed to dismiss the failure to appear indictment and to recommend a total offense level of 30, but which left "[e]ach party . . . free to recommend whatever sentence it deem[ed] appropriate."  At sentencing, George asked the court to vary downward; the government asked the court to vary upward.

The court calculated George's Guidelines range as 135 to 168 months.  The court then varied upward, sentencing George to 240 months' imprisonment for nine of the counts, and 120 months for the remaining count, to run concurrently.  George was ordered to pay almost $3 million in restitution.  He timely appealed.

No. 19-5331, *United States v. George*

## II.

George argues that the district court erred when it twice rejected his earlier plea agreements. Pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C), a "plea agreement may specify that an attorney for the government will agree that a specific sentence or sentencing range is the appropriate disposition of the case." The court, however, is not bound; it "may accept the agreement, reject it, or defer a decision until the court has reviewed the presentence report." Fed. R. Crim. P. 11(c)(3)(A). If the court rejects the agreement, the defendant may withdraw his guilty plea. *Id.* at (c)(5)(B).

"While a defendant has 'no absolute right to have a guilty plea accepted,' a court must exercise 'sound judicial discretion' in determining whether to reject a plea." *United States v. Cota-Luna*, 891 F.3d 639, 647 (6th Cir. 2018) (quoting *Santobello v. New York*, 404 U.S. 257, 262 (1971)). "Judges have an independent obligation to ensure that Rule 11(c)(1)(C) agreements stipulate to an appropriate sentence within the applicable Guideline range, or else justify any departure from the Guidelines." *United States v. Sabit*, No. 17-1054, 2019 WL 6842346, at *2 (6th Cir. Dec. 16, 2019) (citing *Freeman v. United States*, 564 U.S. 522, 529 (2011) (plurality opinion)).

The parties dispute whether we should review the district court's refusal to accept the plea agreements for an abuse of discretion or plain error, or whether we should even review the court's decision as to the Second Agreement at all. We need not decide, however, because George cannot show even an abuse of discretion. The court exercised sound discretion in both instances.

*First Agreement*. At the plea hearing on the First Agreement, the court reserved judgment, "want[ing] to see the PSR and see how [George's] criminal history comes out" before accepting the deal. At the sentencing hearing, the district court, equipped with the PSR, rejected the agreement. The court recognized its independent duty to verify that the sentence was "sufficient but not greater than necessary . . . in light of the guidelines and the [18 U.S.C. § 3553(a)] factors." The court concluded that the agreed-upon sentence of 72 months was insufficient in light of the

No. 19-5331, *United States v. George*

Guidelines range, which was 84 to 105 months. We see no error in this decision. The court appropriately recognized its role in reviewing the First Agreement and reasonably exercised its discretion in rejecting the agreed-upon sentence as inconsistent with the § 3553(a) factors. *See Sabit*, 2019 WL 6842346, at *2.

*Second Agreement*. After the PSR had been revised to reflect George's criminal case in Nevada for passing a worthless check, the court held a second sentencing hearing. The court determined that the criminal history points underrepresented George's criminal history. Even after serving 92 months, at which point George would be 70 years old, the court explained, George could still kite a check or pick up the phone to cheat someone out of her retirement income. The court believed George was a "danger to the community" and would continue to be one. Thus, the court believed a 92-month sentence running "consecutively with the state court in Nevada up to a maximum of 12 months" would be appropriate. The possibility of a consecutive sentence came as a surprise to George, so the court allowed him to reconsider the agreement and his plea. When George said he needed more time to consider the ramifications of a consecutive sentence, the court rejected the Second Agreement to allow George to discuss the matter with his attorney and come up with another agreement or elect trial. Again, the district court reasonably exercised its discretion by rejecting the agreement, having determined that the agreed-upon 92-month sentence was too low given George's lengthy criminal history. We see no abuse of the court's discretion in rejecting these agreements.

III.

George next contests his sentence. "A criminal sentence must be both procedurally and substantively reasonable." *United States v. Parrish*, 915 F.3d 1043, 1047 (6th Cir. 2019) (citing *United States v. Morgan*, 687 F.3d 688, 693 (6th Cir. 2012)). George challenges his sentence on both grounds.

*Procedural Reasonableness*. "Procedural reasonableness requires the court to 'properly calculate the guidelines range, treat that range as advisory, consider the sentencing factors in 18

-5-

No. 19-5331, *United States v. George*

U.S.C. § 3553(a), refrain from considering impermissible factors, select the sentence based on facts that are not clearly erroneous, and adequately explain why it chose the sentence.'" *Id.* (quoting *United States v. Rayyan*, 885 F.3d 436, 440 (6th Cir. 2018)). George argues that his sentence is procedurally unreasonable because the district court did not consider all the § 3553(a) factors or adequately explain the chosen sentence.[1] Normally, we review for an abuse of discretion, *id.*, but where a defendant does not object below, we apply plain error, *United States v. Bostic*, 371 F.3d 865, 872–73 (6th Cir. 2004). Once more, the parties cannot agree on which standard applies. Again, however, we need not decide because George has not shown error, plain or otherwise.

Contrary to George's assertion, "[t]he court need not explicitly consider each of the § 3553(a) factors; a sentence is procedurally reasonable if the record demonstrates that the sentencing court addressed the relevant factors in reaching its conclusion." *United States v. Dexta*, 470 F.3d 612, 614–15 (6th Cir. 2006). Here, we believe the district court adequately performed its duty.

The district court explained that it had considered all the § 3553(a) factors and read everything that had been submitted to the court. The court characterized this as a "serious case," and explained that "the evidence establishes beyond peradventure that the defendant has larceny in his heart." The court recognized that George had a long criminal history and concluded that there was likely nothing that would stop George from committing more fraud offenses now. The court determined that, when fashioning a sentence in George's case, its "main duty [was] to protect the public in the future." As a result, the court sentenced George to an above-Guidelines sentence.

---

[1] George also states that his sentence is unreasonable because the court chose the sentence arbitrarily and grounded it on impermissible factors. But George does not identify any purportedly impermissible factor, nor does he develop either argument further, and so we consider this issue forfeited. *See United States v. Johnson*, 440 F.3d 832, 845–46 (6th Cir. 2006) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed [forfeited].").

-6-

No. 19-5331, *United States v. George*

In sum, the court considered "each and every point in" the § 3553(a) factors and explained its sentence.  There was no procedural error.

*Substantive Reasonableness*.  "Substantive unreasonableness is 'a complaint that the court placed too much weight on some of the § 3553(a) factors and too little on others in sentencing the individual.'"  *Parrish*, 915 F.3d at 1047 (quoting *Rayyan*, 885 F.3d at 442).  George claims that the court placed too much weight on George's flight and the need to protect the public.  We review for an abuse of discretion.  *Rayyan*, 885 F.3d at 442.

The district court had good reason to put significant weight on these factors.  During the final sentencing hearing, the court heard testimony that George's fraudulent schemes had harmed at least thirty-five people and had continued while he was a fugitive.  While on the run, in Texas, he posed as a retired lawyer (he had dropped out of law school in 1989), who claimed to run two businesses (one that he claimed traded in securities).  He fled Texas and his purported business after writing numerous bad checks, telling those who knew him that he was terminally ill and needed to leave the country.  Relocating to Alabama, George again posed as a retired lawyer.  While there, George worked at a Mercedes dealership using another man's identity.  He leased a Mercedes in someone else's name and had the vehicle delivered to Florida—his next destination.  In Florida, George posed as a Harvard-trained psychiatrist, under the pseudonym Steven R. Oliver, M.D.  Using this false identity, he unlawfully dispensed prescription drugs to a fifteen-year-old, landing the boy in the emergency room.  The overwhelming evidence suggested that George would continue to act as he had in the past once he was free.  The district court reasonably concluded, then, that protecting the public was of utmost importance.

While the district court gave great weight to the need to protect the public, taking into account both his flight and his continuing fraud while a fugitive, it does not seem that he diminished the other factors—nor does George make such a complaint.  From our view of the record, the court listened to evidence from both sides at a sentencing hearing that lasted nearly five hours, considered the § 3553(a) factors, and fashioned a sentence that it believed appropriate, given

-7-

No. 19-5331, *United States v. George*

the seriousness of George's offenses, his lengthy criminal history, and his demonstrated commitment to continuing his criminal ways.  George has given us no reason to second guess the district court's judgment that this above-Guidelines sentence was warranted.  *See Rayan*, 885 F.3d at 443.  There was no substantive error.

* * *

For the reasons set forth above, we AFFIRM the judgment of the district court.