**IN THE UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF TENNESSEE NASHVILLE DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | **NO. 3:15-cr-00069** |
| **v.** | ) | |
| | ) | **JUDGE CAMPBELL** |
| **GEORGE DAVID GEORGE** | ) | |

**ORDER**

Pending before the Court is Defendant's motion for sentence reduction under 18 U.S.C. § 3582(c)(1)(A) (Doc. No. 161), which is fully briefed. (*See* Doc. Nos. 166, 168). For the reasons stated herein, Defendant's motion (Doc. No. 161) is **DENIED**.

## I. BACKGROUND

> George David George bilked unwitting investors out of millions of dollars that he claimed would earn them a piece of an online health and wellness company. He lied about the company and spent much of the money others had entrusted to him on gambling and servicing his personal debts. He was eventually convicted by plea of nine counts of fraud and one count of money laundering; though after the district court rejected his first two plea agreements, he absconded from justice, spending nineteen months as a fugitive and continuing to deceive. The district court sentenced him to 240 months' imprisonment.
>
> George was the founder and CEO of WellCity, Inc., a business that purported to operate a social media network focused on health and wellness. Between March 2011 and April 2014, George solicited more than $3 million in investments for the business. George obtained these investments by lying about WellCity's financial health and by falsely asserting that WellCity either was traded publicly or had approval from the Securities and Exchange Commission to trade publicly. George also failed to inform investors of his prior convictions for mail fraud, filing a false income tax return, embezzlement, passing worthless checks, and bank fraud, to name just a few of his more glaring omissions. Rather than invest the funds in the business, he diverted a substantial portion to personal uses like gambling and retiring personal debts.
>
> In June 2013, the Tennessee Department of Commerce and Insurance issued a cease-and-desist order to George and other WellCity employees, explaining that George was illegally offering and selling securities in WellCity and was

engaging in securities fraud by failing to disclose material information about his prior criminal convictions. Nevertheless, George persisted in operating WellCity and continued his lies and omissions to potential investors.

Approximately two years later, federal prosecutors charged George by information with one count of wire fraud, in violation of 18 U.S.C. § 1343; one count of mail fraud, in violation of 18 U.S.C. § 1341; one count of money laundering, in violation of 18 U.S.C. § 1957 and § 2; and one count of securities fraud, in violation of 15 U.S.C. § 78j and 78ff and 17 C.F.R. Part 240.10b-5. Waiving felony indictment, George pleaded guilty pursuant to a Federal Rule of Criminal Procedure 11(c)(1)(C) plea agreement (First Agreement), which included an agreed-upon sentence of 72 months. The court accepted George's plea but reserved acceptance of the plea agreement pending review of the Presentence Investigation Report (PSR). At George's sentencing hearing, the court rejected the plea agreement because it found the 72-month sentence to be inconsistent with the sentencing factors set forth in 18 U.S.C. § 3553(a). Neither party objected. The court advised George that he had the right to withdraw his guilty plea.

The court later learned that, while on conditional pretrial release, George had been charged in Nevada for passing a worthless check in the amount $44,750. Shortly thereafter, the parties entered into a second plea agreement (Second Agreement), specifying a term of 92 months' imprisonment. The agreement did not indicate whether the agreed-upon sentence would run concurrently or consecutively with sentences from other jurisdictions. The court again accepted George's guilty plea and scheduled a sentencing hearing.

During sentencing, the court explained that it would accept a 92-month sentence that ran consecutive to George's Nevada sentence, up to a maximum of 12 months, but did not believe a 92-month concurrent sentence would be appropriate. Defense counsel said that George would need some time to consider a partially consecutive sentence, particularly its potential effect on where he would be housed. Thus, the court rejected the Second Agreement, so George could discuss it with his attorney and either work on a new plea agreement or go to trial. George did not object to the court's approach.

Following this hearing, George filed a notice of intent to withdraw his guilty plea, and the case was set for trial. Months later, a ten-count superseding indictment was filed, adding six counts of wire fraud. Before trial could begin, the government learned that, while on release, George had engaged in yet another check-kiting scheme. George, who was out on bail, then cut off his ankle monitor and fled. The court issued a warrant for his arrest; and when he failed to appear for trial, he was indicted for failure to appear, in violation of 18 U.S.C. § 3146(a)(1).

> Nineteen months later, authorities apprehended George in Florida. Six days before his new trial date, he pleaded guilty pursuant to a third plea agreement (Third Agreement), in which the government agreed to dismiss the failure to appear indictment and to recommend a total offense level of 30, but which left "[e]ach party ... free to recommend whatever sentence it deem[ed] appropriate." At sentencing, George asked the court to vary downward; the government asked the court to vary upward.
>
> The court calculated George's Guidelines range as 135 to 168 months. The court then varied upward, sentencing George to 240 months' imprisonment for nine of the counts, and 120 months for the remaining count, to run concurrently. George was ordered to pay almost $3 million in restitution.

*United States v. George*, 804 Fed.Appx. 358, 360–61 (6th Cir. Mar. 12, 2020) (citation modified).

The Sixth Circuit Court of Appeals affirmed Defendant's sentence over his contention that the Court placed too much weight on his flight and the need to protect the public:

> The district court had good reason to put significant weight on these factors. During the final sentencing hearing, the court heard testimony that George's fraudulent schemes had harmed at least thirty-five people and had continued while he was a fugitive. While on the run, in Texas, he posed as a retired lawyer (he had dropped out of law school in 1989), who claimed to run two businesses (one that he claimed traded in securities). He fled Texas and his purported business after writing numerous bad checks, telling those who knew him that he was terminally ill and needed to leave the country. Relocating to Alabama, George again posed as a retired lawyer. While there, George worked at a Mercedes dealership using another man's identity. He leased a Mercedes in someone else's name and had the vehicle delivered to Florida—his next destination. In Florida, George posed as a Harvard-trained psychiatrist, under the pseudonym Steven R. Oliver, M.D. Using this false identity, he unlawfully dispensed prescription drugs to a fifteen-year-old, landing the boy in the emergency room. The overwhelming evidence suggested that George would continue to act as he had in the past once he was free. The district court reasonably concluded, then, that protecting the public was of utmost importance.
>
> While the district court gave great weight to the need to protect the public, taking into account both his flight and his continuing fraud while a fugitive, it does not seem that he diminished the other factors—nor does George make such a complaint. From our view of the record, the court listened to evidence from both sides at a sentencing hearing that lasted nearly five hours, considered the § 3553(a) factors, and fashioned a sentence that it believed appropriate, given the seriousness of George's offenses, his lengthy criminal history, and his demonstrated commitment to continuing his criminal ways.

> George has given us no reason to second guess the district court's judgment that this above-Guidelines sentence was warranted. *See Rayyan*, 885 F.3d at 443. There was no substantive error.

*George*, 804 Fed. Appx. at 363–64.

## II. LAW AND ANALYSIS

Although a district court generally lacks authority to modify a term of imprisonment once it has been imposed, the compassionate release statute, 18 U.S.C. § 3582(c)(1)(A), is one exception. The statute gives the district court discretion to reduce a term of imprisonment if three criteria are met: (1) extraordinary and compelling reasons for a reduction; (2) consistent with applicable policy statements issued by the Sentencing Commission; and (3) consideration of applicable § 3553(a) factors. A district court "may deny compassionate release motions when any of the three prerequisites listed in § 3582(c)(1)(A) is lacking and do not need to address the others." *United States v. Navarro*, 986 F.3d 668, 670 (6th Cir. 2021).

Through the pending motion, Defendant submits that his poor health and family circumstances constitute extraordinary and compelling reasons for a reduction in his sentence and that his requested reduction is consistent with the Sentencing Commission's policy guidance in U.S.S.G. § 1B1.13. The Government responds that Defendant's motion should be denied, in part, because he has not offered any basis for the Court to conclude that the Section 3553(a) factors weigh in favor of release and, that, in light of his serious criminal behavior and the fact that he has served less than 40% of his sentence, they do not. In his reply, Defendant argues the severity of his health challenges, his advanced age (70), and his rehabilitation while in prison make him unlikely to re-offend.

Here, even assuming without deciding that Defendant has presented extraordinary and compelling reasons for compassionate release that are consistent with the Sentencing

Commission's applicable policy statements, the Court finds that the Section 3553(a) factors – namely the nature and circumstances of the offense, as well as the need for the sentence imposed to reflect the seriousness of the offense and to promote respect for the law – weigh against granting Defendant's request for compassionate release at this time. Accordingly, Defendant's motion (Doc. No. 161) is **DENIED**.

It is so **ORDERED**.

WILLIAM L. CAMPBELL, JR.
CHIEF UNITED STATES DISTRICT JUDGE